UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SAMUEL SANCHEZ APARICIO,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Respondents. | Case No. 2:25-cv-01919-RFB-DJA<br><br>**ORDER** |

Before the Court is the (ECF No. 2) Emergency Motion for a Temporary Restraining Order ("TRO") by Petitioner Samuel Sanchez Aparicio. For the following reasons, the Court converts the Motion into a Motion for Preliminary Injunction and grants it.

**I.  INTRODUCTION**

This case is one of many in this district and across the country challenging the lawfulness of the Government's new policy of mandating detention of all undocumented noncitizens during the pendency of their removal proceedings—several of which have been resolved or are currently pending before the undersigned Judge. Petitioner Sanchez Aparicio is similarly situated to the petitioners in Herrera Torralba v. Knight, Case No. 2:25-cv-01366-RFB-DJA, and Maldonado Vazquez v. Feeley, Case No. 25-cv-1542 RFB-EJY, as he is detained pursuant to a regulatory automatic stay of an Immigration Judge (IJ)'s order that he be released on bond. The Department of Homeland Security (DHS) unilaterally invoked the automatic stay under C.F.R. § 1003.19(i)(2) pending its appeal of the IJ's decision to the Bureau of Immigration Appeals (BIA). This Court previously found the automatic stay—which is being invoked systemically to override the individualized determinations of the Las Vegas Immigration Court that noncitizens should be

released on bond—is unconstitutional both facially and as applied to noncitizens like Petitioner. See, e.g., Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025) (granting the Petition for Writ of Habeas Corpus); Maldonado Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025) (granting a preliminary injunction to Petitioner). As in Herrera and Vazquez, the principal basis of DHS' appeal of the IJ's bond release order is the agency's new interpretation of its detention authority under specific provisions of the Immigration Naturalization Act (INA), 8 U.S.C. §§ 1225(b)(2) and 1226(a)—an interpretation which this Court has repeatedly rejected. See Vazquez, 2025 WL 2676082, at *11-16; Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025). In both cases, the Government opposed the petitioners' motions for a preliminary injunction based on purely legal and largely identical arguments to those raised by the Government in this case, and after full briefing and a hearing, the Court granted preliminary relief, enjoining Respondents from preventing the petitioners' release on bond in violation of the INA and U.S. Constitution.

This Court is not alone is its finding, as the overwhelming majority of district courts across the country that have considered DHS and the BIA's new statutory interpretation (including this Court) have found it unlawful. See, e.g., Vazquez, 2025 WL 2676082, at *16 (finding the statutory text and "canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance" demonstrate the government's new reading of § 1225(b)(2) is likely unlawful); see also Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.") (collecting cases).

Here, Petitioner seeks a preliminary injunction ordering his immediate release from detention on bond as ordered by an IJ and asserts his continued detention pursuant to the automatic stay under C.F.R. § 1003.19(i)(2) violates his due process rights under the Fifth Amendment. Because this Court already found the regulatory stay unconstitutional on its face, each day Petitioner's detention continues, he suffers the irreparable harm of the unconstitutional deprivation

of his liberty.

## II. PROCEDURAL HISTORY

On October 8, 2025, Petitioner Samuel Sanchez Aparicio, who is currently detained in ICE custody at the Henderson Detention Center, filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Kristi Noem, in her official capacity as Secretary of DHS, Pamela Bondi, in her official capacity as Attorney General of the United States, Thomas Feeley, in his official capacity as Field / Acting Director of the Salt Lake City Field Office of Detention and Removal Operations, ICE, DHS, Reggie Rader, in his official capacity as the Henderson Police Chief, and Maria Bellow, in her official capacity as the Corrections Captain and highest-ranking employee at the Henderson Detention Center. ECF No. 1. Petitioner concurrently filed the instant Emergency Motion for TRO. ECF No. 2.

This case was initially assigned to the Honorable Judge Gloria M. Navarro, but on October 22, 2025, was transferred to the undersigned judge as related to two pending putative class actions, Case Numbers 2:25-cv-01542-RFB-EJY and 2:25-cv-01553-RFB-BNW. ECF No. 16. On October 14, 2025, counsel for Respondents filed a notice of appearance. ECF No. 9. Respondents' counsel sought an extension of time to respond until October 21, 2025, which the Court granted. ECF 12. On October 21, 2025, Respondents filed their Response to the Motion, arguing for its denial. ECF No. 14. Petitioner filed his Reply on October 22, 2025. ECF No. 18. The Court's Order follows.

## III. BACKGROUND

The Court fully incorporates by reference the statutory and regulatory background relevant to the Government's challenged mandatory detention policy and the C.F.R. § 1003.19(i)(2) automatic stay set forth in its ruling in Maldonado Vazquez, 2025 WL 2676082, at *6-11.

The Court makes the following findings of fact relevant to Petitioner. Petitioner is a 57-year-old noncitizen who entered the U.S. without inspection in or around 1997, and since then, has continuously resided in the country for almost thirty years. Petitioner has deep and lasting ties to the Las Vegas, Nevada community where he resides. Petitioner and his wife have two sons, ages

27 and 21, both of whom have legal status. He has three grandchildren, all of whom are U.S. citizens, that he is very close to. Petitioner also provides financial and emotional support to his brother, a lawful permanent resident, who is currently undergoing dialysis treatment and incapacitated as a result. Prior to his detention, Petitioner was employed by Concrete Specialty for five years and was the primary breadwinner for his household. He has worked in the construction industry for decades and is known for his work ethic and strong sense of responsibility. In addition, he is a homeowner and has filed federal income tax returns annually.

On August 6, 2025, Petitioner was arrested in Las Vegas, Nevada on a misdemeanor DUI charge and traffic violation. This is his first and only arrest, and no complaint has been filed to-date.[1] ICE took custody of Petitioner soon after his arrest and initiated removal proceedings by issuing a Notice to Appear on August 7, 2025.[2] ICE classified Petitioner as "an alien present in the U.S. who has not been admitted or paroled," rather than an "arriving alien," and charged him as inadmissible and subject to removal under 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I), to be held in detention pending a hearing before an immigration judge. ECF No. 2-1. He has been detained at Henderson Detention Center since then.

On August 27, 2025, Petitioner requested a custody redetermination hearing (*i.e.*, bond hearing) before the Las Vegas Immigration Court. At the September 3, 2025 hearing before IJ Glen Baker, Petitioner submitted evidence demonstrating that he was not a danger to the community or a flight risk, including letters attesting to his positive character and strong community ties, particularly in terms of his commitment to his family.

The IJ granted Petitioner's request for release on bond in the amount of $3,500 with alternatives to detention at the discretion of DHS. ECF No. 2-13. The IJ declined to make a finding regarding any danger Petitioner posed to the community and concluded that he was not a flight risk based on his long-standing ties to the Las Vegas community. Id. Within 48 hours, DHS invoked the automatic stay pending appeal under 8 C.F.R. § 1003.19(i)(2) by filing a Form EOIR-43 on September 5, 2025. On September 17, 2025, counsel for DHS filed a notice of appeal with

---

[1] This charge remains pending.
[2] It is not clear from the record if and where Petitioner was detained prior to entering ICE custody.

the BIA, arguing Petitioner is an "applicant for admission" subject to mandatory detention and ineligible for bond under 8 U.S.C. § 1225(b)(2).

Both Petitioner and his family members are struggling due to his detention. His wife has incurred substantial debt to make mortgage payments and cover household expenses and is suffering from depression and anxiety in her husband's absence. Petitioner's brother is undergoing dialysis treatment and is now without the financial and emotional support Petitioner previously provided. Since being detained, Petitioner himself has developed severe and uncontrolled hypertension, which has received limited attention and intervention within the detention facility.

### IV.   LEGAL STANDARDS

#### A. Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856

1  F.3d 666, 669 (9th Cir. 2017).

### B.  § 2441 Petition for Writ of Habeas Corpus

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003).

### V.    DISCUSSION

As a threshold matter, this Court converts Petitioner's Motion for Temporary Restraining Order into one for a preliminary injunction. Respondents had notice, an opportunity to respond, and ability to be heard. See Fed. R. Civ. P. 65 Because the standards for the two forms of relief are the same, and the Court finds there is no benefit in additional briefing, issuance of a preliminary injunction is warranted.

The Court further issues this Order without a hearing. In the Ninth Circuit, whether to hold an evidentiary hearing or hear oral argument on a preliminary injunction is a matter of the district court's discretion. See e.g., Stanley v. Univ. of S. California, 13 F.3d 1313, 1326 (9th Cir. 1994) (citations omitted) (refusal to hold a preliminary injunction hearing "is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter."). A court may rely solely on the briefing and affidavits of the parties where the urgent need for injunctive relief so requires. Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 555 (9th Cir. 1986).

Here, the parties have not requested oral argument or an evidentiary hearing. See id. (noting the failure to request an evidentiary hearing may constitute waiver). Additionally, the Court finds there are no disputes of fact material to the request for preliminary relief that would necessitate an evidentiary hearing. Rather, the opposition by Respondents raises solely legal issues, and this Court has heard oral arguments on these issues from Respondents' counsel in multiple related habeas matters. See e.g., Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025). For those reasons, and considering the urgent need for injunctive relief where Petitioner's liberty is at stake, the Court finds a preliminary injunction ruling without a hearing is warranted in this case.

### A. Jurisdiction

Respondents first assert the Court lacks jurisdiction over Petitioner's habeas challenge to the lawfulness of his detention by Respondents. Respondents' arguments are foreclosed by Ninth Circuit and Supreme Court precedent. See Vazquez, 2025 WL 2676082, at *7-9; Roman, 2025 WL 2710211, at *5. The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. §§ 1252(a), (b)(9), (g), and (e) do not apply, as discussed and held by the Court in granting habeas relief to similarly situated petitioners, which the Court fully incorporates by reference and applies here. See Vazquez, 2025 WL 2676082, at *7-9; Roman, 2025 WL 2710211, at *5.

### B. Administrative Exhaustion

The Court fully incorporates by reference its prior finding that administrative exhaustion is excused as futile. See Herrera, 2025 WL2481792, at *7-8; Vazquez, 2025 WL 2676082, at *9-10.

///

///

### C. Preliminary Injunction

#### i. Likelihood of Success or Serious Questions

First, the Court finds Petitioner has satisfied the most important Winter factor: he is likely to succeed on the merits of his Petition for Writ of Habeas Corpus, because (1) § 1226(a), not § 1225(b)(2), applies to him, and therefore his detention without bond violates the INA and (2) Respondents' continued detention of Petitioner pursuant to the automatic stay of the IJ's bond release order under 8 C.F.R. §1003.19(i)(2) violates Petitioner's procedural and substantive due process rights. See Matsumoto v. Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits is the most important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation).

The Court fully incorporates by reference its reasoning and holding regarding the statutory question and automatic stay from Vazquez. WL 2676082, at *11-22. Again, the Court rejects Respondents' statutory interpretation, and finds Petitioner is detained under § 1226(a).

#### ii. Irreparable Harm

The next factor requires a showing "that irreparable harm is likely, not just possible" in the absence of an injunction. Alliance for the Wild Rockies, 632 F.3d at 1131. Petitioner clearly faces irreparable harm in the absence of a judicial intervention. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows "inexorably" from this Court's conclusion that detention via the automatic stay is unconstitutional—such that Petitioner would continue to be deprived of his physical liberty in violation of procedural and substantive due process in the absence of intervention—that Petitioner has carried his burden as to irreparable harm. Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). The Ninth Circuit has further recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id.

///

### iii. *Balance of Equities and Public Interest*

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotations omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The harm to the government here is minimal. The Court is simply ordering a recognition of the IJ's bond hearing determination—a bond hearing process which is contemplated by the regulations and is a part of the Government's normal operations in any event. Moreover, it is DHS' new reading of the INA which upends decades of consistent agency practice, and subjects millions of individuals to mandatory detention that is creating the significant fiscal and administrative burden on the Government. However, this is a burden of its own choosing.

In contrast, the hardships faced by Petitioner and the public interest in issuing an injunction weigh strongly in his favor. Not only has Petitioner developed a severe medical issue while in custody, but detention has separated Petitioner from his family, employment, and community and imposed increased financial and emotional burdens on his wife, brother, children, and grandchildren. Hernandez, 872 F.3d at 996 ("in addition to the potential hardships facing [the plaintiff] in the absence of the injunction, the court may consider the indirect hardship to their friends and family members) (quotation marks and citation omitted). And because the Court has found it is likely that Respondents are unlawfully detaining Petitioner under § 1225(b)(2), "neither equity or the public interest are furthered" by allowing Respondents' violation of the INA to continue—quite the opposite. Galvez, 52 F.4th at 832; Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty

and held in immigration detention because of . . . a likely unconstitutional process.").

As such, this Court finds the balance of the equities and public interest "tip sharply towards" Petitioner. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser showing that Petitioner has raised only "serious questions going to the merits" of his challenge to his detention under the INA and Constitution, Petitioner is entitled to a preliminary injunction.

### D. Bond

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents do not argue that Petitioner's release pursuant to the IJ's order would be costly, so the Court declines to set bond beyond the amount imposed by the IJ.

### VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that Petitioner's Motion for a Preliminary Injunction (ECF No. 2) is **GRANTED.** Pending a resolution on the merits, Respondents are:

(1) **ORDERED** to release Petitioner from ICE custody by **5:00 p.m. on October 24, 2025**. Petitioner shall be subject to the bond and other conditions imposed by the IJ.

(2) **ENJOINED** from continuing to detain Petitioner pursuant to the C.F.R. § 1003.19(i)(2) automatic stay or otherwise denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

**IT IS FURTHER ORDERED** that Petitioner shall have until **12:00 p.m. on November**

**3, 2025**, to satisfy the bond conditions. If he does not satisfy them, he will be subject to rearrest and detention. Petitioner is instructed to provide proof of payment by the deadline to Respondents' counsel.

**DATED:** October 23, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**